■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEXTER ISAAC, Appellant. [625 NYS2d 635] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Tomei, J.), rendered August 9, 1990, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

During his summation, the defense counsel requested that the members of the jury try to fit a stainless-steel .45 caliber

automatic gun, which had been introduced into evidence by the People, into the pocket of a pair of shorts, which had been introduced into evidence by the defendant. The defense counsel apparently intended to demonstrate the unreliability of the testimony of the two police officers who claimed to have observed a "bulge" protruding from the shorts worn by the defendant at the time of his arrest.

The defendant argues that the court erred in not allowing the jury to experiment with the gun and the shorts that had been introduced into evidence. We note that the experiment proposed by the defense counsel, involving as it did an empty pair of shorts, would have been carried out under conditions far different from those which existed at the time of defendant's arrest when, as is obvious, the shorts were being worn. We also note that there is some evidence that other items might have been concealed in the pockets of the defendant's shorts at the time of his arrest. Considering the discretionary nature of the determination as to which items of real evidence may be furnished to a retiring jury (see, CPL 310.20 [1]), we find no reversible error in this case (see generally, People v Legister, 75 NY2d 832; People v Brown, 48 NY2d 388; People v Andrew, 156 AD2d 978). Bracken, J. P., Rosenblatt and Altman, JJ., concur.

O'Brien, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: I conclude that, under the particular circumstances of this case, the court's instruction to the jurors that they were not to experiment with the items introduced into evidence deprived the defendant of a fair trial.

At approximately 1:00 A.M. on the day of his arrest, the defendant, wearing a T-shirt and shorts, was walking down a Brooklyn street with his girlfriend. Two police officers who knew the defendant from a previous encounter observed him from their patrol car. One of the officers testified that he saw the outline of a gun in the pocket of the defendant's shorts, and the other officer said he saw an "L"-shaped object in the defendant's pocket. Upon their approach, the defendant allegedly threw a gun underneath a parked van. The gun was recovered and was admitted into evidence at the defendant's trial.

The defendant presented a witness who testified that there were at least 10 men standing on the corner when the officers approached the defendant and that he saw a man other than the defendant throw an object under the van. In addition, the

defendant's girlfriend testified that he was not carrying a gun that morning, and she identified a pair of shorts as those worn by the defendant when he was arrested. The shorts, which had not been identified by the prosecution's witnesses, were admitted into evidence based on her testimony.

While the defendant's girlfriend was still on the witness stand, the defense counsel sought to have her place the gun inside the pocket of the shorts. The People's objection to this demonstration was sustained. During the colloquy regarding this issue, the court, on two occasions, informed the defense counsel that it also would not permit a demonstration of the defendant wearing the shorts with the gun in the pocket unless the defendant testified. The defense counsel did not pursue this issue further, and the defendant did not testify. In his summation, the defense counsel suggested that the jurors place the gun in the pocket of the shorts during their deliberations. The court immediately instructed the jurors that they were not to perform such an experiment, and the court repeated that instruction during its charge.

Contrary to my colleagues, I find that the court erred in precluding this so-called "experiment" by the jurors. As a general rule, contrived experiments by jurors are disapproved when the result would put them in possession of evidence which was not introduced at trial. Such jurors become, in effect, unsworn witnesses, and their conduct is prejudicial to the defendant's right to confront and cross-examine the witnesses against him (see, People v Brown, 48 NY2d 388; see also, People v Legister, 75 NY2d 832; People v De Lucia, 20 NY2d 275). Those concerns are not implicated here. The shorts and the gun were admitted into evidence, and the defendant requested that the jury consider the evidence in this manner. Moreover, jurors are not precluded from applying their everyday experiences and common sense to the issues presented in a trial (see, People v Smith, 59 NY2d 988; cf., People v Brown, supra). Here, the jurors should not have been precluded from taking the logical, common-sense step of placing the gun in the pocket of the shorts during their deliberations to test the credibility of the witnesses' testimony (see, e.g., People v Engler, 150 AD2d 827 [jurors' conduct in filling vaporizer with water in jury room and operating it was permissible application of everyday experience to the issues as vaporizer was admitted into evidence and experimentation was limited to deliberations in the jury room]; see also, People v Smith, supra [juror's evaluation of ability to observe the interior of an automobile through its rear window was prop-

erly classified as an everyday experience, rather than an experiment which would constitute misconduct]).

I find that the court's instruction to the jury was particularly prejudicial when viewed in connection with its ruling that, unless the defendant took the stand, he would not be permitted to demonstrate, by wearing the shorts, the way the gun looked in the pocket. The court has the discretion to admit demonstrative evidence without subjecting the defendant to cross examination when the proper foundation is laid *(see, People v Scarola,* 71 NY2d 769; *People v Shields,* 81 AD2d 870; *People v Williams,* 130 Misc 2d 773; *cf., People v Rodriguez,* 64 NY2d 738). Here, a proper foundation was laid as both the gun and shorts were in evidence.

The court, of course, may exclude even relevant evidence in the exercise of its discretion "if its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury" *(People v Scarola, supra,* at 777; *see also, People v Acevedo,* 40 NY2d 701). I find that the court's ruling was an improvident exercise of its discretion as the value of the evidence outweighed its potential for prejudice. The issue of whether the officers were able to observe an outline of a gun in the defendant's shorts was crucial to his defense. Although the circumstances surrounding the defendant's arrest could not be precisely duplicated in the courtroom, the main elements were present—the gun, the shorts, and the defendant. Any variations from the original circumstances would affect the weight to be accorded to the demonstration but would not warrant its exclusion *(see, People v Mariner,* 147 AD2d 659).

I recognize that the defendant has not argued on appeal that the court's preclusion of this courtroom demonstration constituted reversible error. Consequently, I would not reverse his conviction on that ground. The preclusion of the courtroom demonstration, however, exacerbated the prejudicial effect of the court's instruction to the jurors that they were not to place the gun inside the pocket of the shorts during their deliberations. The jury was thereby deprived of an effective means of assessing the credibility of the witnesses. As this case turned on the witnesses' credibility, the court's erroneous instruction was not harmless. Accordingly, I would reverse and grant the defendant a new trial.